# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ERICA M. NASH O/B/O A.R.N.H., | Case No. 2:17-cv-00484-KJD-BNW |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff A.R.N.H.'s ("Plaintiff") application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff is a minor.

The court has reviewed Plaintiff's motion for reversal or remand (ECF No. 17), filed August 11, 2017, and the Commissioner's response and cross-motion to affirm (ECF Nos. 18 and 19), filed September 11, 2017. Plaintiff did not file a reply. This matter was referred to the undersigned magistrate judge on May 3, 2019 for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**I.    BACKGROUND**

   **1.    Procedural History**

On July 19, 2012, Plaintiff's mother applied for supplemental security income on Plaintiff's behalf under Title XVI of the Act, alleging an onset date of February 1, 2008. AR[1] 64. Plaintiff's claim was denied initially on November 26, 2012 and on reconsideration on January 14, 2014. AR 91-94, 101-104. A hearing was held before an Administrative Law Judge ("ALJ")

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 13)).

on May 1, 2015. AR 45-61. On October 2, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 21-39. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on December 16, 2016. AR 1-7. Plaintiff, on February 15, 2017, commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* IFP App. (ECF No. 1).)

### 2. The ALJ Decision

The ALJ followed the three-step sequential evaluation process set forth in 42 U.S.C. § 1382c(a)(3)(C)(i). AR 27-39. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 19, 2012. AR 27. At step two, the ALJ found Plaintiff had a medically determinable "severe" combination of impairments of disruptive impulse control and conduct disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ also found Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of listings. *Id.* Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from July 19, 2012 through the date of the decision. AR 39.

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) reads: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner *de novo*. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

//

//

### 2. Disability Evaluation Process

To qualify for Title XVI supplemental security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide a three-step process to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in substantial gainful activity. *Id*. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id*. § 416.924(c). Finally, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." *Id*. § 416.924(c)-(d).

If the ALJ finds the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing. *Id*. § 416.926a(a) (2011).[2] The ALJ's functional equivalence assessment requires the ALJ to evaluate the child's functioning in six domains. These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for self; and

(6) Health and physical well-being.

---

[2] As of March 27, 2017, 20 C.F.R. § 416.926a(a) was amended. The ALJ rendered his decision on October 2, 2015; thus, the court applies the version effective June 13, 2011.

*Id*. § 416.926a(b)(1)(i)-(vi) (2011).  A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitations in two domains, or an "extreme" limitation in one domain.  *Id.* § 416.926a(a) (2011).  An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities."  *Id*. § 416.926a(e)(2)(i) (2011).  By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities."  *Id*. § 416.926a(e)(3)(i) (2011).

### 3. Analysis

#### a. Whether the ALJ obtained a complete case evaluation

Based on the evidence in the record, the ALJ found Plaintiff is not disabled.  AR 27, 39.  But Plaintiff argues the ALJ failed to comply with the Social Security Acquiescence Ruling 04-1(9) by not having a medical expert perform a full case evaluation, including evaluating A.R.N.H.'s most recent records relating to his mental health.  The Commissioner responds the ALJ was not required to obtain a medical expert's testimony to review the full record at the hearing because he properly relied on expert opinions in the existing record as well as the opinions of a consultative psychologist who performed a post-hearing consultative examination of Plaintiff.  The Commissioner also argues Plaintiff waived this issue by "represent[ing at the hearing] that the record was complete, and ask[ing] the ALJ to close the record without any additional evidence."  The Commissioner does not cite to the record where the exchange between Plaintiff and the ALJ took place, and the court could not locate the exchange either; accordingly, the court will consider whether the ALJ erred by failing to have a medical expert perform a full case evaluation.  AR 45-61.

State agencies[3] must make "reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual" evaluates the plaintiff's case.  42 U.S.C. § 1382c(a)(3)(I).  Although the Ninth Circuit in *Wolff v. Barnhart*, 341 F.3d 1006, 1013-14 (9th Cir. 2003) found that an ALJ also must adhere

---

[3] The Social Security Administration defines a state agency as "an agency of a State designated by that State to carry out the disability or blindness determination function."  20 C.F.R. § 404.1502(h).

to the requirements under 42 U.S.C. § 1382c(a)(3)(I), the Social Security Administration ("SSA") issued Acquiescence Ruling 04-1(9) effective April 26, 2004 to state that the Ninth Circuit was incorrect to expand the requirements of 42 U.S.C. § 1382c(a)(3)(I) beyond State agencies to include ALJs.  Under this Ruling, the SSA determined that an ALJ or an administrative appeals judge ("AAJ") "*may* rely on case evaluation[s] made by a State agency medical or psychological consultant that is already in the record, or the ALJ or AAJ *may* rely on the testimony of a medical expert."  Acquiescence Ruling 04-1(9) (emphasis added).  In instances in which the ALJ[4] relies on a State agency medical or psychological consultant, the "record must include the evidence of the qualifications of the State agency medical or psychological consultant."  *Id*.  Further, the ALJ's or AAJ's decision must explain how he considered the State agency medical or psychological consultant's evaluation.  *Id*.

Although the SSA's failure to follow binding regulations is reversible error, *Orn v. Astrue,* 495 F.3d 625, 635-36 (9th Cir. 2007), SSA Rulings do not have "the force of law" and are not binding upon the courts.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (citing *Paxton v. Secretary of Health Human Servs.,* 856 F.2d 1352, 1356 (9th Cir. 1988)); *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  That said, the courts grant the Rulings "some deference" as long as they are consistent with the Social Security Act and regulations.  *Massachi v. Astrue,* 486 F.3d 1149, 1152 n.6 (9th Cir. 2007) (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)).

Here, the ALJ thoroughly reviewed Plaintiff's records, including evidence from medical sources such as consultative (i.e., State agency) and treating medical providers; information from other sources, including Plaintiff's teachers; and statements made by Plaintiff and his mother.  AR 27-33.  At the hearing, he ALJ also noted that "we might need a new CE [consultative examination] . . . because . . . we have an older CE . . ." and requested for Plaintiff to consult with

---

[4] Acquiescence Ruling 04-1(9) refers only to the ALJ when discussing this requirement.

a child psychologist. AR 60-61. Plaintiff completed the requested consultative examination with psychologist Dr. Daniel Malatesta, Ed.D. after the hearing, on July 9, 2015. AR 630-639. Plaintiff and the Commissioner disagree on whether *Wolff* or Acquiescence Ruling 04-1(9) controls; however, even under the broader *Wolff* standard, the ALJ in the instant case, by requesting a current consultative examination of Plaintiff by a child psychologist, made "reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual" evaluates Plaintiff's case. *Wolff*, 341 F.3d at 1013-14; 42 U.S.C. § 1382c(a)(3)(I).

The ALJ's decision also explains, as required under Acquiescence Ruling 04-1(9), how he considered the State agency medical and psychological consultants' opinions. For example, the ALJ writes that he assigned "great weight" to Drs. James' and Malatesta's opinions because they "were uncontradicted opinions of acceptable medical sources under the Regulations who each had an opportunity to perform a relatively thorough consultative examination of the claimant." AR 32-33. The ALJ also writes that he assigned "significant weight" to the opinions of Drs. Evans, Tolbert, and Roldan relating to Plaintiff's limitations because they were "based upon a thorough review of the evidence and familiarity with Social Security Rules and Regulations and legal standards set forth therein," were "well-supported by the medical evidence," and included "detailed treatment notes." AR 33. Accordingly, the court finds that under the *Wolff* standard, the ALJ obtained a complete case evaluation by requesting at the May 1, 2015 hearing that Plaintiff be scheduled to consult with a child psychologist and having the examination take place with consultative psychologist Dr. Malatesta on July 9, 2015. AR 60-61, 630-639. Furthermore, the court finds the ALJ properly complied with the Social Security Acquiescence Ruling 04-1(9) because he relied on both State agency and non-State agency medical consultants in reaching the determination that Plaintiff was not under a disability at any time from July 19, 2012 through the date of the decision on October 2, 2015.

//

//

//

### b.  Whether the ALJ properly evaluated the opinions of A.R.N.H.'s teachers

The ALJ found Plaintiff's teachers' opinions, when considered with the rest of the record, supported Plaintiff having no limitation or a limitation that did not "seriously interfere" with Plaintiff's functioning.  AR 31-39.  Plaintiff argues the ALJ erred by rejecting the opinions of Plaintiff's kindergarten special education teacher, his two first-grade teachers, and his second-grade teacher.  The Commissioner responds the ALJ properly evaluated the statements provided by Plaintiff's teachers because he discussed and used them in making his decision.

The ALJ must consider "acceptable medical sources" under 20 C.F.R. § 404.1513(a).  A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id.* § 404.1502(d).  Acceptable medical sources include licensed physicians, licensed or certified independent or school psychologists, licensed optometrists, licensed podiatrists, licensed audiologists, and licensed advanced practice registered nurses.  *Id*. § 404.1502(a)(1-8).  Social Security Administration regulations give opinions of specialists more weight than those opinions of non-specialists.  *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001).  In order to reject the testimony of an acceptable medical source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009)).

An ALJ must also consider the statement of lay witnesses or non-medical sources in determining whether a claimant is disabled.  *Stout v. Commissioner, Social Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Examples of non-medical sources include claimants, educational personnel (e.g., school teachers, counselors), public and private social welfare agency personnel, and family members.  *Id.* § 404.1502(e).  The ALJ may discount testimony from lay or non-medical sources only if he "give[s] reasons that are germane to each witness" for doing so. *Molina*, 674 F.3d at 1112 (quoting *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir.

2010) (quoting *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (noting that because lay witnesses can testify to a claimant's symptoms, their testimony cannot "be disregarded without comment").

Here, Plaintiff's teachers do not qualify as acceptable medical sources because they are school teachers. Because Plaintiff's teachers are non-specialists (i.e., lack a medical specialty), the ALJ must assign greater weight to the opinions provided by (medical) specialists who evaluated Plaintiff. Further, because Plaintiff's teachers are non-medical sources, the ALJ must provide "reasons that are germane to each witness" if he rejects or discounts their opinions. In determining the degree of Plaintiff's limitations in each of the six functional equivalence domains, the ALJ cites the questionnaires completed by Plaintiff's teachers. For example, in evaluating whether Plaintiff has a marked or extreme limitation relating to acquiring and using information, the ALJ lists the findings of three teacher questionnaires completed by Plaintiff's kindergarten special education teacher, one of his first-grade teachers, and his second-grade teacher. AR 32. Although the ALJ does not explicitly write the weight he assigns to the teachers' opinions, he does note "[w]hile [Plaintiff] initially was rated as a having a serious problem in four of the ten categories, this decreased to two categories in 2013 and [to] none in 2014." *Id.* The ALJ's discussion on how Plaintiff's "serious problem" disappeared as of 2014 can be understood as ALJ considering, and not discounting, the teachers' evaluations of Plaintiff. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting the reviewing court is "not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

In evaluating Plaintiff's limitation as it relates to attending and completing tasks, the ALJ cites Plaintiff's Individualized Educational Program and Positive Behavior Intervention Support Plan, Plaintiff's teacher questionnaire completed by his two first-grade teachers, and Plaintiff's teacher questionnaire completed by his second-grade teacher. AR 34. The ALJ writes that Plaintiff "needed assistance to complete tasks and transition to kindergarten," and by first grade, Plaintiff "had a very serious problem in three out of thirteen categories." *Id*. This "very serious problem" increased to five categories in second grade. *Id*. Similar to the ALJ's analysis in the first functional equivalence domain, the ALJ does not specify the weight he assigned to the

teachers' opinions though he explains that "[a]fter considering all of the evidence," which also included the opinions of DDS consultants and consultative psychologists Drs. James and Malatesta, he found Plaintiff did have a limitation in the domain, but not one that "'seriously interfere[d]' with his functioning . . . ." *Id*. Dr. James found Plaintiff possessed the concentration and attention span to understand, remember, and carryout a full-range of age-appropriate instructions on a sustained basis though he could face difficulties in a classroom environment with more distractions and time constraints. *Id*. Dr. Malatesta opined that Plaintiff did not exhibit any signs of poor attention and appeared to be able to stay on task when asked to do so. *Id*. The ALJ's discussion of the opinions of Drs. James and Malatesta provides germane reasons for discounting the teachers' opinions in favor of consultative examiners who have medical specialties in the relevant field of psychology. Accordingly, the court finds the ALJ properly evaluated the opinions of Plaintiff's teachers by weighing them alongside the opinions of Plaintiff's consultative medical examiners. Whether the ALJ could or should have interpreted the teachers' opinions differently is not a question for this court as the reviewing court is not a finder of fact. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *see also Burch*, 400 F.3d at 679 (noting even where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld).

## III.   CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion to remand (ECF No. 17) be denied.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm (ECF Nos. 18 and 19) be granted.

## IV.   NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule I+B 3-2(a). Failure to file a timely

objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 6, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE